# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT BOLUS, individually, and d/b/a BOLUS TRUCK SALES CENTER, | CIVIL ACTION NO. 3:11-2027 |
| Plaintiffs, | |
| v. | (JUDGE CAPUTO) |
| FLEETWOOD MOTOR HOMES OF IN, INC., TOM JOHNSON CAMP CENTER, and CUMMINS ATLANTIC, | |
| Defendants. | |

## MEMORANDUM

Presently before the Court are motions to dismiss Plaintiffs' Complaint filed by Defendants Cummins Atlantic ("Cummins") (Doc. 15) and Tom Johnson Camping Center Charlotte, Inc. ("Tom Johnson"). (Doc. 17.) Plaintiffs Robert Bolus ("Bolus") and Robert Bolus Truck Sales Center assert a number of claims against the three named Defendants related to a recreational vehicle (the "RV") that Plaintiffs purchased from Tom Johnson and was manufactured by Fleetwood Motor Homes of IN, Inc. ("Fleetwood"). Defendants Cummins and Tom Johnson move to dismiss the Complaint based on lack of personal jurisdiction and improper venue. Because these Defendants do not have "continuous and systematic" contact with this forum and have not "purposefully availed themselves of the privilege of conducting activities with the forum," the Court cannot exercise personal jurisdiction over Cummins and Tom Johnson. However, because statute of limitations issues may arise as a result of the time that has lapsed between the filing of this action and now, justice requires that the action be transferred to the Middle District of North Carolina.

## I. Background

Plaintiffs commenced this action against Fleetwood, Cummins, and Tom Johnson alleging that jurisdiction and venue in this Court are proper pursuant to 28 U.S.C. §§ 1332, 1391. (*Compl.*, ¶¶ 1-3.)

Plaintiff Bolus is an adult citizen of Pennsylvania and Plaintiff Bolus Truck Sales Center is a business existing under the laws of Pennsylvania. (*Id*. at ¶¶ 4-5.) Defendant Fleetwood is a business organized under the laws of Indiana with a principal place of business in Indiana. (*Id*. at ¶ 7.) Fleetwood is in the business of manufacturing motor coaches. (*Id*. at ¶ 10.)

Defendant Tom Johnson is a North Carolina corporation with a principal place of business in North Carolina. (*Id*. at ¶ 8) Tom Johnson is a licenced dealer of Fleetwood motor coaches and is also a full service repair center of motor coaches. (*Id*. at ¶¶ 11-12.)

Defendant Cummins is a North Carolina limited liability company with a principal place of business in North Carolina. (*Id*. at ¶ 9.) Cummins is in the business of manufacturing engines for motor coaches. (*Id*. at ¶ 27.)

Bolus was the owner of a 2007 Revolution L.E., Class A Motor Home. (*Id*. at ¶ 13.) In an attempt to upgrade his motor home, Bolus contacted employees or representatives for Tom Johnson and Fleetwood from his residence and business located in Pennsylvania. (*Id*. at ¶ 14.) Bolus informed Tom Johnson and Fleetwood of his desired specifications for the RV, including an engine with at least 425 horse power. (*Id*. at ¶¶ 15-16.) Tom Johnson then informed Bolus that Fleetwood was manufacturing an RV for an order that had recently been canceled. (*Id*. at ¶ 17.)

On or about October 12, 2009, Bolus visited Fleetwood's manufacturing plant in Indiana to inspect the RV. (*Id*. at ¶ 18.) At this time, Bolus was informed that the RV was equipped with a 425 horse power engine. (*Id*. at ¶ 19.) This was confirmed by the RV's

window sticker. *(Id.)* Bolus then entered into an agreement to purchase the RV manufactured by Fleetwood and sold through Tom Johnson. (*Id.* at ¶ 20.)

After Bolus purchased the RV, he attempted to drive the vehicle to Florida. (*Id*. at ¶ 22.) During the trip, however, he noticed that the RV lacked power. (*Id*.) As such, he took the vehicle to Tom Johnson's service repair center in North Carolina. (*Id*.) Bolus agreed to leave the RV for repair and inspection and told Tom Johnson that he would return for it around Thanksgiving. (*Id*. at ¶¶ 24-25.)

Due to the lack of engine power, Tom Johnson sent the RV to Cummins, the manufacturer of the engine, for repair. (*Id*. at ¶¶ 26-27.) Despite the RV's window sticker, Cummins determined that the RV was not equipped with a 425 horse power engine. (*Id*. at ¶ 28.) Cummins then upgraded the engine. (*Id*. at ¶ 29.) However, while the RV was at Cummins' facility for repairs, the RV was vandalized causing a large amount of damage. (*Id*. at ¶ 30.)

Bolus learned of the vandalism once he returned to Tom Johnson's facility in North Carolina to pick up the RV. (*Id*. at ¶ 31.) Bolus then drove the RV to a service center in Florida and waited for payment from Cummins to have the RV repaired. (*Id*. at ¶¶ 32-33.) Cummins, however, did not provide enough money to pay for all of the necessary repairs, and Plaintiffs' attempts to obtain additional money were unsuccessful. (*Id*. at ¶¶ 34-37.) On or about September 2010, Bolus returned the RV to Tom Johnson for additional repairs and the RV has remained there ever since. (*Id*. at ¶¶ 39-40.)

As a result of the foregoing events, Plaintiffs commenced the present action on October 31, 2011 asserting a number of state law claims against Defendants. On March 19, 2012, Defendant Fleetwood filed an Answer with Affirmative Defenses. Thereafter, on May 4, 2012, Defendant Cummins filed a motion to dismiss (Doc. 15), and on May 14, 2012, Defendant Tom Johnson filed a motion to dismiss. (Doc. 17.) Both motions seek

3

dismissal for lack of personal jurisdiction and improper venue. As the motions have now been fully briefed, they are ripe for disposition.

## II. Discussion

### A.   Personal Jurisdiction

While the Court can accept Plaintiff's allegations regarding jurisdiction as true for purposes of the motions to dismiss, "once the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 147 (3d Cir. 1992) (internal citation omitted).

District courts are permitted to exercise personal jurisdiction over a nonresident to the extent allowed under the laws of the state where the district court sits. Fed. R. Civ. P. 4(e); *Pennzoil Prods. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). Pennsylvania's long-arm statute, 42 Pa. Cons. Stat. Ann. § 5322, "permits Pennsylvania courts to exercise personal jurisdiction over nonresident defendants 'to the constitutional limits of the Due Process Clause of the Fourteenth Amendment.'" *Id*. (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)).

Such due process requires that an out-of-state defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)); *see also Goodyear Dunlop Tires Operations v. Brown*, — U.S. —, 131 S. Ct. 2846, 2853, 180 L. Ed. 2d 796 (2011) (affirming that "[t]he canonical opinion in this area remains *International Shoe*"). Due process also requires some voluntary action by the defendant; this action serves as "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*,

4

471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (citations omitted).

Having the requisite contacts with the forum state may subject the defendant to either general jurisdiction or specific jurisdiction. General jurisdiction allows a court to "hear any and all claims against [a party] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citing *International Shoe*, 326 U.S. at 317). The hallmark of general jurisdiction is "continuous and systematic" contacts with the forum state, even where the cause of action is unrelated to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

Specific jurisdiction, on the other hand, "arises out of" or "relates to" the cause of action when the contacts are "isolated or specific." *Burger King*, 471 U.S. at 472–73. It depends not on an entity's overall vulnerability to suit in a forum, but "on an 'affiliatio[n] between the forum and the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S.Ct. at 2851 (citing von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)).

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action where the district court lacks personal jurisdiction over the defendant. Once a defendant raises a jurisdiction defense, "the plaintiff must 'prove by affidavits or other competent evidence that jurisdiction is proper.'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)). And, where, as here, there has been no evidentiary hearing, "'the plaintiffs need only establish a *prima facie* case of personal jurisdiction.'" *Id*. (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). Plaintiffs argue that the Court may assert either general or specific jurisdiction over Cummins and Tom Johnson.

5

### 1. General Jurisdiction

"When the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros*, 466 U.S. at 414. "A court may exercise general jurisdiction over a defendant where he or she has 'continuous and systematic' contacts with the forum, whether or not those contacts are related to the plaintiff's cause of action." *Metcalfe*, 566 F.3d at 334 (citing *Helicopteros*, 466 U.S. at 416). "In considering general jurisdiction, we must look to all defendants' contacts, which must be 'extensive and pervasive . . . .'" *Lolli v. Parc Mgmt., LLC*, No. 11-1372, 2012 WL 688475, at *3 (M.D. Pa. Mar. 2, 2012). Thus, "[t]he standard for evaluating whether minimum contacts satisfy the test for general jurisdiction is more stringent than the test applied to questions of specific jurisdiction." *Saudi v. Acomarit Maritimes Servs., S.A.*, 114 F. App'x 449, 453 (3d Cir. 2004) (citing *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998)).

*Helicopteros Nacionales de Colom. v. Hall* considered whether a Texas state court could exercise jurisdiction over a Colombian corporation ("Helicol") for the crash of one of its helicopters in Peru. 466 U.S. 408, 409, 104 S. Ct. 1868, 80 L.Ed.2d 404 (1984). The combined contacts with the Texas forum included "sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas corporation] for substantial sums; and sending personnel to . . . Fort Worth for training." *Id*. at 416, 104 S. Ct. 1868. These contacts were not trivial; the helicopters purchased in Texas constituted 80% of Helicol's fleet and constituted more than four million dollars of commerce over seven years preceding the accident. *Id*. at 411, 104 S. Ct. 1868. Still, the Court held that these contacts did not "constitute the kind of continuous and

6

systematic general business contacts" necessary for general jurisdiction. *Id*. at 412, 104 S. Ct. 1868. In finding as much, the Court promulgated a long list of considerations it found relevant to a lack of jurisdiction:

> Helicol never has been authorized to do business in Texas and never has had an agent for the service of process within the State. It never has performed helicopter operations in Texas or sold any product that reached Texas, never solicited business in Texas, never signed any contract in Texas, never had any employee based there, and never recruited an employee in Texas. In addition, Helicol never has owned real or personal property in Texas and never has maintained an office or establishment there. Helicol has maintained no records in Texas and has no shareholders in that State.

*Id*. at 411, 104 S. Ct. 1868.

As to Cummins, it is a North Carolina business with its principal place of business in North Carolina. (*Jordan Aff.*, ¶¶ 3-4.) Cummins has no investors, board members, partners, shareholders, officers, employees, contractors, or agents in Pennsylvania. (*Id*. at ¶ 7.) Nor does Cummins have any offices, bank accounts, business addresses, phone numbers, or listings in Pennsylvania. (*Id*. at ¶ 8.) It is also not registered nor licensed to do business in the Commonwealth of Pennsylvania, it does not own, rent, or lease property in Pennsylvania, and it has never paid any Pennsylvania taxes. (*Id*. at ¶¶ 8-11.) Lastly, Cummins has never been a party to litigation in Pennsylvania. (*Id*. at ¶ 12.)

Similarly, Tom Johnson is a North Carolina corporation with its principal place of business in North Carolina. (*Stroud Aff.*, ¶ 2.) It has never registered to conduct business in Pennsylvania and has never paid any Pennsylvania taxes. (*Id*. at ¶¶ 9, 10.) Tom Johnson does not maintain any offices or addresses in Pennsylvania, nor does it have any investors, board members, partners, shareholders, officers, employees, contractors, or agents in Pennsylvania. (*Id*. at ¶¶ 6-7.) It also does not own, rent, lease, or sublease any property in Pennsylvania. (*Id*. at ¶ 8.) Tom Johnson does not advertise or market in Pennsylvania. (*Id*. at ¶ 5.) It also did not solicit Plaintiffs. (*Id*. at ¶ 12.)

Nevertheless, Plaintiffs allege that Defendants' activities within the forum in the form

7

of Tom Johnson's advertisements in RV magazines, Cummins maintaining a toll-free number, Defendants' websites, and communications with Plaintiffs while they were in Pennsylvania sufficiently form the basis for general personal jurisdiction.

### a. Advertisements in Magazines

Pennsylvania district courts have "previously held that advertisements and solicitations alone are insufficient to support general personal jurisdiction over nonresidents corporations, . . . even where those efforts were targeted specifically at Pennsylvania residents." *Rivera v. Bally's Park Place, Inc.*, 798 F. Supp. 2d 611, 616 (E.D. Pa. 2011) (citing *Ferro v. Atl. City Showboat, Inc.*, No 07-1016, 2007 WL 4275506, at *3 (E.D. Pa. Dec. 3, 2007); *Feldman v. Bally's Park Place, Inc.*, No. 05-5345, 2006 WL 1582331, at *3 (E.D. Pa. June 5, 2006)). Similarly, the Third Circuit has determined that advertising in "non-Pennsylvania newspapers with international circulations . . . does not constitute 'continuous and substantial' contacts with the forum state." *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985).

Here, while Plaintiffs assert that they learned about Tom Johnson through advertisements in RV magazines, (*Bolus Aff.*, ¶ 12), this evidence is simply not extensive and pervasive enough to confer general jurisdiction. As such, Defendants' advertising activities in RV magazines does not give rise to general personal jurisdiction in this forum.

### b. Toll-Free Phone Number

Plaintiffs also suggest that general personal jurisdiction is proper as to Cummins because it has a 1-800 number. However, "providing a toll-free phone number without more specific targeting of the forum state is insufficient for general personal jurisdiction." *Brown v. AST Sports Sci., Inc.*, No. 01-1682, 2002 WL 32345935, at *8 (E.D. Pa. June 28, 2002) (citing *S. Morantz Inc. v. Hang & Shine, Ultrasonics, Inc.*, 79 F. Supp. 2d 537, 540-41 (E.D. Pa. 1999); *Composite Marine Propellers, Inc. v. Vanderwoude*, 741 F. Supp. 873, 878 (D.

8

Kan. 1990)). Accordingly, the fact that Cummins maintains a toll-free number is an insufficient basis to conclude that it is subject to general personal jurisdiction in Pennsylvania.

### c. Defendants' Websites

Plaintiffs also assert that Defendants' websites subject it to general jurisdiction in Pennsylvania. In determining whether a website confers personal jurisdiction, courts in the Third Circuit consider:

> [T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive website that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction . . . The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the website.

*Henning v. Suarez Corp.*, 713 F. Supp. 2d 459, 469 (E.D. Pa. 2010) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). And, "[c]ourts have recently placed particular emphasis on the need for a website to specifically target a forum in order for it to serve as a basis for general jurisdiction." *Id*. (citing *Davis v. PNGI Charles Town Gaming, LLC*, No. 07-2352, 2007 WL 4553695, at *6 (E.D. Pa. Dec. 26, 2007)).

In this case, it appears that this case falls somewhere in the middle ground: Tom Johnson and Cummins' websites both primarily serve as advertisements of their services, but they also allow users to exchange information via the internet. Thus, the nature and quality of commercial activity that Tom Johnson and Cummins conduct over the internet, and especially activity directed at Pennsylvania, must be considered. *See, e.g., Live Face*

9

*on Web, LLC v. Highview Travel, LLC*, No. 11-2497, 2012 WL 246016, at *5 (E.D. Pa. Jan. 25, 2012). Plaintiffs, however, do not allege that Defendants targeted or selectively directed promotional activities at Pennsylvania. Nor do Plaintiffs allege that Cummins or Tom Johnson sold products to consumers over the internet. Accordingly, Defendants' websites do not give rise to general jurisdiction in Pennsylvania.

### d. Telephone and E-Mail Communications

Lastly, Plaintiffs assert that an unspecified number of telephone and email communications with Tom Johnson and Cummins employees or representatives establishes general jurisdiction in this forum. However, district courts in the Third Circuit have routinely determined that a non-resident defendant's participation in telephone calls with a resident plaintiff is insufficient to establish general jurisdiction. *See, e.g., Tangible Value, LLC v. Town Sports Int'l Holdings, Inc.*, No. 10-1453, 2011 WL 773218, at *10 (D. N.J. Feb. 28, 2011) ("several phone calls" with plaintiff was insufficient to demonstrate that defendant had continuous and systematic contact with New Jersey); *Kubin v. Orange Lake Country Club, Inc.*, No. 10-1643, 2010 WL 3981908, at *3 (D. N.J. Oct. 8, 2010) ("ten phone calls Defendant made soliciting Plaintiffs to purchase more timeshares, or to sell their own timeshare, are insufficient to establish general jurisdiction"); *Davis v. PNGI Charles Town Gaming, LLC*, No. 07-2352, 2007 WL 4553695, at *5 (E.D. Pa. Dec. 26, 2007) (the defendant's "telephone solicitation of Pennsylvania residents" was insufficient to confer general personal jurisdiction over the defendant"); *Automated Med. Prods. Corp. v. Int'l Hosp. Supply Corp.*, No. 97-2328, 1998 WL 54351, at *4 (E.D. Pa. Jan. 30, 1998) (139 telephone calls by the defendant to forum was not continuous and systematic part of its business to allow the court to exercise general jurisdiction over the defendant). In line with this authority, Defendants' telephone calls and emails to and from Plaintiffs in Pennsylvania are insufficient to establish "continuous and systematic" contact with this forum.

10

Based on the foregoing, none of Defendants' contacts with the forum taken separately are significant enough to confer the basis of general jurisdiction. And, taken together, Defendants' contacts with Pennsylvania are still not "continuous and systematic." As such, there is a lack of general jurisdiction over Cummins and Tom Johnson in the instant case.

### 2. Specific Jurisdiction

The Third Circuit employs a three-part analysis for specific personal jurisdiction. For specific jurisdiction to exist, it must be true that: (1) the defendant "purposefully directed [its] activities" at Pennsylvania, (2) the litigation "arise[s] out of or relate[s] to" at least one of the defendant's activities in Pennsylvania, and (3) the exercise of jurisdiction comports with traditional notions of "fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).[1] In actions where multiple claims are asserted, specific jurisdiction is claim specific because "a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim . . . does not necessarily mean that it has personal jurisdiction over that same defendant as to [the plaintiff's] other claims." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001).

Defendant Cummins argues that specific jurisdiction does not exist in this case because Plaintiffs' action arises from events in North Carolina and not from anything that occurred in Pennsylvania. Similarly, Defendant Tom Johnson argues that Plaintiffs reached out to Tom Johnson at its North Carolina location, the sale of the RV occurred in North Carolina, and any work performed on the RV by Tom Johnson occurred in North Carolina. In opposition, Plaintiffs argue that Tom Johnson purposefully created contacts with

---

[1] All the parties' specific jurisdiction arguments focus on the traditional three-step test for specific jurisdiction and not the "effects" test enunciated in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).

11

Pennsylvania by advertising in RV magazines and through its website, which resulted in communications with Tom Johnson while Plaintiff was in Pennsylvania. Additionally, Plaintiffs argue that Cummins availed itself to Plaintiffs by "voluntarily taking the task of working on a vehicle which it knew was registered to an owner in Pennsylvania." (Doc. 23, 8) As such, Plaintiffs assert that specific jurisdiction exists in this case because "[b]oth Defendants were aware of Plaintiff being from Pennsylvania and voluntarily undertook the task to have a business relationship with him for their own commercial benefit. They could have declined the opportunity to do business with Plaintiff, but wanted the financial benefit of the business." (*Id*. at 9.)

### a.     Purposeful Direction

The threshold inquiry for specific personal jurisdiction considers whether Defendants have "'purposefully availed [themselves] of the privilege of conducting activities within the forum.'" *O'Connor*, 496 F.3d at 318 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). "[W]hat is necessary is a deliberate targeting of the forum. Thus, the 'unilateral activity of those who claim some relationship with a nonresident defendant' is insufficient." *Id*. (quoting *Hanson*, 357 U.S. at 253). Specific jurisdiction is established when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

While "[m]ail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction," *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993), the Third Circuit has also held that "'informational communications in furtherance of [a contract between a resident and nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'" *Vetrotex Certainteed Corp. v.*

*Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (quoting *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993)).

In internet cases, the "purposeful availment" requirement is satisfied "[i]f a web site operator intentionally targets the site to the forum state, and/or knowingly conducts business with forum state residents via the site." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). Thus, "'something more' than simply having a website accessible to individuals in the forum state must be shown." *Planet Goalie, Inc. v. Monkeysports, Inc.*, No. 10-2629, 2011 WL 3876178, at *4 (M.D. Pa. Sept. 1, 2011). When a website is "interactive", the website must be shown to target a particular remote jurisdiction. *See id*.

In addition, "a few email and telephone communications by themselves are generally not enough to establish" specific personal jurisdiction. *InfoMC, Inc. v. Comprehensive Behavioral Care, Inc.*, No. 10-4907, 2012 WL 1114360, at *8 (E.D. Pa. Mar. 20, 2012) (finding purposeful availment where the parties exchanged 1,580 pages of emails); *Rychel v. Yates*, No. 09-1514, 2011 WL 1363751, at *16 (W.D. Pa. Apr. 11, 2011) ("agreement-related telephone and email correspondence between Plaintiff and Defendant are insufficient to support an exercise of specific personal jurisdiction over Plaintiff's breach of contract claim"). Similarly, "follow-up telephone calls to officers of [Plaintiffs] in Pennsylvania cannot suffice as a basis for [specific personal] jurisdiction over it." *Mellon Bank*, 983 F.2d at 556.

In this case, the contacts Plaintiffs allege that Defendants had with Pennsylvania are insufficient to establish that Defendants purposefully availed themselves to this forum. First, as to Tom Johnson's contract contacts with Plaintiffs, they are largely similar to the contacts the Third Circuit deemed insufficient to establish specific jurisdiction in *Vetrotex*. 75 F.3d at 151.

> Vetrotex solicited Conglas to obtain the 1991 Supply Agreement by telephone and by personal visits to Conglas headquarters in California. Conglas did not

13

> solicit the 1991 Supply Agreement, and no Conglas personnel ever visited Pennsylvania. Conglas signed the 1991 Supply Agreement in California and sent it to CertainTeed in Pennsylvania. Similarly, with respect to the 1992 Supply Agreement, officers of CertainTeed flew to California to negotiate that contract. The 1992 Supply Agreement was prepared by CertainTeed and sent to Conglas in California, where it was executed. No product was shipped from, through, or to Pennsylvania. Instead, the chopped strand was manufactured in Texas and shipped directly from Vetrotex's plant in Texas to Conglas's facility in California. Vetrotex handled all of the transportation arrangements and paid the transportation costs. Vetrotex's invoicing for product sold under the 1992 Supply Agreement was handled by Vetrotex's California office. Conglas made all payments for goods to Vetrotex's California office.

*Id*. at 151. Based on these facts, the Third Circuit held "that the undisputed circumstances attending Conglas's 1991 and 1992 Supply Agreements with Vetrotex do not support the conclusion that Conglas 'purposefully availed' itself of the privileges of doing business in Pennsylvania for purposes of the district court's exercise of personal jurisdiction over Conglas." *Id*. at 152. Here, Tom Johnson never entered Pennsylvania, the RV was sold in North Carolina, Plaintiffs solicited Tom Johnson after learning about it through advertisements in magazines, and Tom Johnson did not ship the RV to Pennsylvania.

Second, the email and telephone communications between the parties also fail to establish that Defendants "purposefully availed" themselves to this forum. The evidence set forth by Plaintiffs only establishes that the parties engaged in telephone and e-mail communications[2] without Defendants' representatives or employees traveling to Pennsylvania. This evidence of informational communications regarding Defendants' products, without more, is insufficient to establish that Defendants "purposefully availed" themselves to this forum. *See, e.g., SMB Consulting & Investing LLC v. Apple Valley Waste Serv., Inc.*, No. 11-2939, 2011 WL 2937432, at *3 (E.D. Pa. July 21, 2011) ("although Defendant may have sent numerous e-mails and made several phone calls in furtherance of the contract, Plaintiff has not identified anything concerning those communications that

---

[2] Plaintiffs have not identified the number of telephone conversations or email exchanges that they had with Cummins and/or Tom Johnson while Plaintiffs were located in Pennsylvania.

14

establish any kind of connection with Pennsylvania").[3] Without identifying the extent of the parties communications, Plaintiffs have failed to establish "purposeful availment" by a preponderance of the evidence. Thus, the "minimal exchange of emails and phone calls [does] not subject the defendant[s] to jurisdiction in the forum state." *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 371 (E.D. Pa. 2009) (citing *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 n.2 (3d Cir. 1998)).

Lastly, Plaintiffs have failed to present any evidence that Defendants' websites targeted a specific, remote location- in this case the Middle District of Pennsylvania. While Plaintiffs argue that Tom Johnson's website advertised "specifically to entice the out of state customer, some who would travel the interstate highways, for example, north and south through North Carolina," Plaintiffs provide no evidence that Tom Johnson (or Cummins for that matter) intentionally and directly targeted these website advertisements specifically at Pennsylvania.

Based on the foregoing, Plaintiffs have not demonstrated that Defendants "purposefully availed" themselves to Pennsylvania, *see, e.g., Hufnagel v. Ciamacco*, 281 F.R.D. 238, 249 (W.D. Pa. 2012), and the Court cannot exercise specific personal jurisdiction in this case.

### b. Relatedness

Furthermore, even if Defendants "purposefully availed" themselves to Pennsylvania, the Court would be unable to exercise personal jurisdiction over all of Plaintiffs' claims because not all of the causes of actions arose out of Defendants' forum related activities.

---

[3] Plaintiffs also have not presented any evidence that Defendants knew Plaintiffs were Pennsylvania residents. (*Bolus Aff.*, ¶¶ 14, 18, 26); *Cf. Hyndman v. Johnson*, No. 10-7131, 2011 WL 57008, at *4 (E.D. Pa. Feb. 15, 2011) (Defendant was aware during the course of negotiations that Plaintiff was a Pennsylvania resident).

Case 1:12-cv-00898-NCT-JLW Document 26 Filed 08/17/12 Page 15 of 19

*See, e.g., Croyle v. Hutchinson*, No. 11-1141, 2012 WL 2358999, at *4 (W.D. Pa. June 20, 2012). While "the Supreme Court has not yet explained the scope of the [arises out of or related to] requirement," the Third Circuit has concluded that the "relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." *O'Connor*, 496 F.3d at 318-24.

Indeed, Plaintiffs' claims against Cummins relate to the allegedly negligent conduct that occurred in North Carolina and are not at all intertwined with Cummins' advertisements on the internet or the parties' communications. In fact, Plaintiffs' evidence indicates that the contacts with Cummins did not occur until after the RV was vandalized. Accordingly, Plaintiffs' negligence, bailment, and intentional infliction of emotional distress claims cannot be said to "arise out of" Cummins' contacts with Pennsylvania. Plaintiffs, therefore, cannot establish specific personal jurisdiction over Cummins.[4]

---

[4] As to the claims against Tom Johnson, based on the evidence presented by Plaintiffs, even if Tom Johnson has "purposefully availed" itself to Pennsylvania, most of Plaintiffs' claims likely do not "arise out of or relate to" its forum-related contacts. Specifically, even in the event that the contract's claim resulted from Defendants' "contacts with the forum [that] were instrumental in . . . formation . . . of the contract," *Control Screening LLC v. Technological Application & Publ'n*, – F.3d –, 2012 WL 3037824, at *2 (3d Cir. 2012), as Plaintiffs provide no evidence that the alleged fraud, misrepresentation, and/or concealed material facts related to their interactions with Tom Johnson's website or with their communications from Pennsylvania with Tom Johnson's employees or agents, it is not clear that these claims "arose out of" Tom Johnson's contacts with Pennsylvania. Stated differently, Plaintiffs presented no evidence that Tom Johnson fraudulently conveyed any information, or failed to disclose any material facts, when it communicated with Plaintiffs while they were in Pennsylvania. And, to the extent that any misrepresentations occurred by Tom Johnson when Bolus was in North Carolina or Indiana, this likely does not relate to its contacts with Pennsylvania. But, as Tom Johnson did not "purposefully avail" itself to this forum, this issue need not be conclusively resolved.

### 3. Jurisdictional Discovery

Plaintiffs request that if it is determined that they have failed to meet their burden to establish personal jurisdiction over Tom Johnson and Cummins, that prior to dismissal of the claims they be permitted to conduct jurisdictional discovery. According to the Supreme Court, "where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). The Third Circuit has instructed that "if 'the plaintiff's claim is not clearly frivolous [as to the basis for personal jurisdiction], the district court should ordinarily allow discovery on jurisdiction in order to aid the plaintiff in discharging that burden.'" *Metcalfe*, 566 F.3d at 336 (quoting *Compagnie Dex Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983)). "Jurisdictional discovery may be denied 'where the party that bears the burden of establishing jurisdiction fails to establish a threshold *prima facie* showing of personal jurisdiction.'" *Shouse v. Nat'l Corrective Grp., Inc.*, No. 10-175, 2011 WL 1376403, at *2 (M.D. Pa. Apr. 12, 2011) (quoting *S. Seafood Co. v. Holt Cargo Sys., Inc.*, No. 96-5217, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997)). "A *prima facie* case requires factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *S. Seafood Co.*, 1997 WL 539763, at *8 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

Here, Plaintiffs have simply asked the Court to open discovery on the jurisdictional issue without articulating with any particularity the additional contacts they hope to find. And, in light of the allegations made in the Complaint, the Court is unable to ascertain how allowing Plaintiffs to seek more information would help demonstrate jurisdiction in this case- as information relating to specific jurisdiction in this case would already be in Plaintiffs'

17

possession. Plaintiffs' request to conduct jurisdictional discovery will therefore be denied.

**B.    Improper Venue**

Tom Johnson and Cummins argue that if the action is not dismissed for lack of personal jurisdiction, then the case should be dismissed for improper venue pursuant to 28 U.S.C. § 1391. Because there is no personal jurisdiction in this case, Defendants' motion to dismiss for improper venue is rendered moot. *See, e.g., Cabot Corp. v. Niotan, Inc.*, No. 08-1691, 2011 WL 4625269, at *15 (E.D. Pa. Sept. 30, 2011); *Lee v. Super King Sauna NJ*, No. 11-2710, 2011 WL 3652490, at *6 (E.D. Pa. Aug. 18, 2011).

**C.    Transfer of Venue**

Plaintiffs argue that in the event that the Court determines that personal jurisdiction over Defendants cannot be exercised, that the action be transferred to an appropriate venue rather than dismissed. "A court may choose to exercise its authority under 28 U.S.C. § 1406(a) and transfer a case to a more suitable venue even if it lacks personal jurisdiction." *Lee*, 2011 WL 3652490, at *6 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)). Here, personal jurisdiction could be exercised in North Carolina- specifically the Middle District of North Carolina- as Tom Johnson's Concord facility where the work on the RV was done is located in that district. As such, rather than risk any statute of limitations issues that may arise as a result of the time that has lapsed between the filing of this action and now, the Court finds that justice requires a transfer to the Middle District of North Carolina.

### III. Conclusion

For the above stated reasons, upon consideration of Cummins and Tom Johnson's motions to dismiss, this action will be transferred to the Middle District of North Carolina

18

pursuant to 28 U.S.C. § 1406(a).

An appropriate order follows.

August 17, 2012
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge

19

Case 1:12-cv-00898-NCT-JLW   Document 26   Filed 08/17/12   Page 19 of 19